UNION CENTRAL LIFE INSURANCE COMPANY v.
LAWRENCE F. FLYNN.[1]

January 24, 1936.

No. 30,614.

[1]Reported in 264 N. W. 786.

*J. L. Krusemark*, for appellant.

*A. H. Clemens*, for respondent.

HOLT, JUSTICE.

Plaintiff appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action is to recover the balance due upon a $15,000 promissory note. Defendant denied that he signed the note as maker and alleged that he signed as witness to his father's signature. These facts appeared without dispute: In November, 1923, defendant's father, Lawrence P. Flynn, who was then over 80 years old, requested defendant to assist him in obtaining loans on his two farms in Olmsted county to pay two past due mortgages thereon and other indebtedness. The father and mother lived on and operated one farm of 240 acres, and the other of 80 acres was occupied and operated by defendant. Mr. Stoudt, the banker at Chatfield, had charge of the past due mortgages and advised the Flynns to go to one G. Worth at Rochester for new loans. Defendant went. Shortly thereafter an appraiser came and viewed the farms, and a few days later Mr. Worth brought to the home of the father a promissory note of $15,000 payable to the order of plaintiff and a mortgage on the 240-acre farm, securing the same, and the attached interest coupons. He also brought a similar note for $5,000, payable to plaintiff and secured by a mortgage on the 80-acre farm; but no further reference need be made to it, being of no importance on this appeal. Defendant was called in and examined the mortgages and, to some extent, the notes. Mr. Worth acted as notary and directed how the documents should be signed. The mortgage securing the $15,000 note contains this recital:

"This mortgage is given to secure the payment of a debt evidenced by certain promissory notes described as follows: One certain

principal note for the sum of Fifteen Thousand & no-100 ($15,000) Dollars, of even date herewith, signed by said Lawrence P. Flynn and Ellen Flynn, his wife, payable to said mortgagee or order at its Home Office in Cincinnati, Ohio, (being for the principal sum loaned) on February 1, 1934—(or in partial payments prior to maturity in accordance with stipulation therein) with interest until paid at the rate therein specified, interest until maturity being evidenced by interest notes of even date herewith."

The father and mother signed the $15,000 note, the attached interest notes, and the mortgage. On the principal note and interest notes, below the printed and typed part, were three lines to the right of the middle blank space about three-fourths of an inch, for the signatures. To the left of the blank space were also three lines. Over these three lines, on the principal note, was printed "Post-Office Address." On the interest notes prefixed to the first line was printed "Address." On the principal note on the first of the three lines was typed "Chatfield, Minn." followed by the signature of defendant. On the interest notes defendant's signature appeared on the third of the three lines to the left of the middle blank space. The father's signature appears on the first of the three lines to the right of the middle blank space. The mother's signature is on the line below her husband's. The facts so far stated were either admitted or proved by unquestioned evidence. On the trial, over the objections of plaintiff, defendant was permitted to testify that Mr. Worth directed where defendant's father and mother should sign the notes, and that he told defendant that "on account of my father's advanced age he would have to elect somebody as his agent or power of attorney, as a matter of form with the company, that they requested that, that they would have to have someone to sign as an agent or power of attorney to state that his mind was all right. * * * He said that I would not be obligated in any way on those notes, that I was merely signing those notes as a witness to my father's mental condition." Also, over objection, defendant was permitted to testify that he did not intend to sign as maker but only as a witness to his father's execution of the notes. Over

defendant's objection plaintiff was permitted to show by testimony of doubtful competency that plaintiff had a rule that it "has never considered any application for a loan or approved or completed any loan to any borrower past the age of 60 years unless a near— a son or near relative joined in the notes so that the company would have someone from whom to collect in case of the borrower's death." It was conceded that on account of default in the payment of interest plaintiff had declared the whole debt due and had duly foreclosed the mortgage, applying the proceeds of the sale upon the note or debt, leaving a deficiency or balance due of $5,569.85 and interest thereon at the rate of five and one-half per cent from September 6, 1932, the date of sale. The only issue of fact submitted to the jury was whether defendant signed the promissory notes as maker or as witness. If defendant was found to have signed as maker, the verdict should be for plaintiff; and if he was found to have signed as a witness, he should have a verdict. The jury returned a verdict for defendant.

From the above statement it is plain that if defendant by competent evidence proved that his signature was affixed to the promissory notes involved as a witness to his father's signature as a maker there should be an affirmance. Defendant's father and mother, the conceded makers of the notes, were both dead before the mortgage was foreclosed and this action was begun. Mr. Worth was not a witness at the trial. The court ruled that the evidence was insufficient to submit to the jury whether Worth was the agent of plaintiff in the loan transaction. But as he presented the notes and mortgage to the borrowers, defendant's father and mother, the court permitted testimony as to how and where Worth directed them and defendant to sign the instruments. The assignments of error upon the rulings admitting this testimony as to where the parties should sign are clearly not well taken. Mr. Worth came to the farm of defendant's parents with the notes and mortgages for the purpose of having the same executed. He acted as the notary. He caused those that were to be filed for record to be so filed after being executed. Insofar as the assignments of error challenge the admission of the testimony of defendant on the ground that parol

evidence was incompetent to vary the term of the notes, since, his name appearing on the face thereof, he is conclusively bound as maker, the decisive legal proposition in this appeal is reached.

8 C. J. p. 108, § 198, states that ordinarily "the signatures of parties to negotiable instruments have a well understood position on the paper, but, so far as the nature of the liability is concerned, it is generally immaterial where a person signs, since the intent of the signer ordinarily governs the nature of his liability."

It is further stated that the signature of the maker or drawer is usually at the lower right-hand corner of the paper. In the next paragraph (§ 199), speaking of attestation of promissory notes, where required, it is stated:

"Where one writes his name without words of attestation on a note, in the place where it is customary for attesting witnesses to sign, he will be presumed to sign as an attesting witness."

In the instant case defendant's name is signed in the place where attesting witnesses sign. In Steininger v. Hoch's Executor, 39 Pa. 263, 80 Am. D. 521, a suit on a promissory note, one person signed on the lower right-hand corner and affixed a seal; the one sued signed on the lower left-hand corner. His defense was that he was a witness and not a maker. The trial court charged that the instrument was *prima facie* proof of his liability as a maker. There was a reversal; and the court in its decision, after saying that when there is but one signature it is of no consequence where placed, continues [39 Pa. 267]:

"But this cannot be claimed where the signature occupies a position that is certainly equivocal. Still less so when the position is that of a subscribing witness, and another has executed the instrument prepared for the signature of but one person."

It is true that in the instant case the notes read: "I promise to pay"; but there are two signers in the proper place for makers and one, the defendant, in the proper place for attesting witness. Moreover, plaintiff loaned its money to the ones who signed in the proper place for makers and who executed the mortgage to secure the notes;

and in that very mortgage the notes are described as executed not by defendant, but by his parents alone. In view of this recital in the mortgage and the position of defendant's signature, it certainly is at least equivocal whether defendant signed as a witness or a maker. That being so, parol evidence was properly admitted to show in what capacity he signed and intended to sign. Proof that he signed as witness in the place customarily used for attestation signatures does not vary any of the terms of the notes. Plaintiff makes some point of 2 Mason Minn. St. 1927, § 7060(6), (L. 1913, c. 272, § 17, N. I. L.), reading:

"Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser."

It is enough to say that the complaint alleges a cause of action against defendant as maker, not as an indorser. In Germania Nat. Bank v. Mariner, 129 Wis. 544, 109 N. W. 574, 576, where subd. 6, § 17, of N. I. L. was inapplicable because the one sued had placed his name on the note in a proper place as maker, it was nevertheless held that, in view of the reading of the note, it was ambiguous whether he intended to sign as a maker or as an officer of the corporation whose note it purported to be. The court there said [129 Wis. 549]:

"It is elementary that, in case a written contract is ambiguous in its terms, parol proof of the facts and circumstances under which it was executed may be introduced to aid in its construction. This rule applies to commercial paper, even in the hands of third persons, because, where the ambiguity is apparent to a reasonably prudent man on the face of the paper, he is necessarily put upon inquiry. * * * The parol evidence in the present case showed without dispute that Mr. Mariner's signature was attached simply in his representative capacity and as agent of the corporation."

So in the instant case, the place of defendant's signature on the notes, coupled with the description in the mortgage which plaintiff exacted to secure their payment, created an ambiguity as to the

capacity in which defendant signed, thus making parol evidence admissible to solve the ambiguity. The evidence sustains the finding of the jury that defendant intended to sign and did sign as a witness and not as maker. This conclusion eliminates other questions ably argued; and, consequently, no good purpose would be served by referring to the many authorities cited by the parties.

Plaintiff assigns error upon different parts of the charge. There were no exceptions taken thereto at the trial. On the motion for new trial the only error assigned on the charge was: "That the court erred in instructing the jury that it should be a question of fact for the jury to determine whether or not the plaintiff was put on notice or should have inquired as to the signature of the defendant upon the notes in question." The instruction given was not in the language of the motion, but that "if the defendant proves to you that as a matter of fact he did not sign as a maker or as an obligor on this note but signed only as a witness, and proves that the company knew it or that the position of his signature upon this note is such that it showed plainly upon the face of the note that there was doubt about what capacity he signed in, in that event the company would be obliged to make inquiry to find out the real meaning of his signature there; in other words, whether he signed it as a maker or as a witness. Then if he proves in addition to that, that inquiry would have shown that he signed only as a witness then you will return a verdict for the defendant." We think this part of the charge now challenged was too favorable to plaintiff. Plaintiff was certainly charged with notice of the recitals in the mortgage concerning who were the makers of the notes here involved.

One ground for a new trial was that the verdict was given by the jury under the influence of passion and prejudice. The assignments here challenge the verdict on the same ground. We fail to find anything in the evidence or in conduct of the trial which suggests that the jury were actuated by passion or prejudice in rendering the verdict.

That the trial court thoroughly considered plaintiff's motion before filing the order denying the same is evidenced by the exhaustive

memorandum of 20 printed pages dealing with the law and facts deemed involved. In our opinion there was no error committed in the trial to the prejudice of plaintiff.

The order is affirmed.